1

2

3

4

5        UNITED STATES DISTRICT COURT

6        EASTERN DISTRICT OF WASHINGTON

7   WESLEY S. STRAIT,

8                        Plaintiff,            NO:  12-CV-0181-TOR

9        v.                                    ORDER GRANTING DEFENDANT'S
                                               MOTION FOR SUMMARY
10  CAROLYN W. COLVIN, Acting                  JUDGMENT
    Commissioner of Social Security
11  Administration[1],

12                       Defendant.

13       BEFORE THE COURT are the parties' cross motions for summary

14  judgment (ECF Nos. 20, 24).  Plaintiff is represented by Maureen J. Rosette.

15  _____

16  [1]  Carolyn W. Colvin became the Acting Commissioner of Social Security on

17  February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,

18  Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit.

19  No further action need be taken to continue this suit by reason of the last sentence

20  of 42 U.S.C. § 405(g).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 1

Defendant is represented by Willy M. Le.  The Court has reviewed the

administrative record and the parties' completed briefing and is fully informed.

There being no reason to delay a decision, the hearing set for May 5, 2014 is

vacated and this matter is submitted without oral argument.  For the reasons

discussed below, the Court grants Defendant's motion and denies Plaintiff's

motion.

JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g).

STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under §405(g) is

limited: the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error."  *Hill v. Astrue*, 688 F.3d 1144,

1149 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means

relevant evidence that "a reasonable mind might accept as adequate to support a

conclusion."  *Id.* (quotation and citation omitted).  Stated differently, substantial

evidence equates to "more than a mere scintilla[,] but less than a preponderance."

*Id.* (quotation and citation omitted).  In determining whether this standard has been

satisfied, a reviewing court must consider the entire record as a whole rather than

searching for supporting evidence in isolation.  *Id.*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 2

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id.* at 1111.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy."  42 U.S.C. §

1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

gainful activity," the Commissioner must find that the claimant is not disabled.  20

C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. §416.920(a)(4)(ii).  If the claimant suffers from

"any impairment or combination of impairments which significantly limits [his or

her] physical or mental ability to do basic work activities," the analysis proceeds to

step three.  20 C.F.R. §416.920(c).  If the claimant's impairment does not satisfy

this severity threshold, however, the Commissioner must find that the claimant is

not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to

several impairments recognized by the Commissioner to be so severe as to

preclude a person from engaging in substantial gainful activity.  20 C.F.R.

§416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 4

1    enumerated impairments, the Commissioner must find the claimant disabled and

2    award benefits.  20 C.F.R. § 416.920(d).

3        If the severity of the claimant's impairment does meet or exceed the severity

4    of the enumerated impairments, the Commissioner must pause to assess the

5    claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

6    defined generally as the claimant's ability to perform physical and mental work

7    activities on a sustained basis despite his or her limitations (20 C.F.R. §

8    416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

9        At step four, the Commissioner considers whether, in view of the claimant's

10    RFC, the claimant is capable of performing work that he or she has performed in

11    the past ("past relevant work").  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

12    capable of performing past relevant work, the Commissioner must find that the

13    claimant is not disabled.  20 C.F.R. §416.920(f).  If the claimant is incapable of

14    performing such work, the analysis proceeds to step five.

15        At step five, the Commissioner considers whether, in view of the claimant's

16    RFC, the claimant is capable of performing other work in the national economy.

17    20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

18    must also consider vocational factors such as the claimant's age, education and

19    work experience.  *Id.*  If the claimant is capable of adjusting to other work, the

20    Commissioner must find that the claimant is not disabled.  20 C.F.R. §

416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012).

ALJ'S FINDINGS

Plaintiff applied for Title II disability insurance benefits on June 16, 2009. [2] The application alleged an onset date of November 2, 2002. [3]  Plaintiff's

---

[2] Plaintiff previously filed a claim for Title II disability benefits on February 9, 2007, alleging disability beginning November 2, 2003.  The claim was denied on June 20, 2007 and the claimant did not request reconsideration.  Tr. 85-88.  Thus, as correctly noted by the ALJ, administrative res judicata may apply to this claim. *See Thompson v. Schweiker*, 665 F.2d 936, 940 (9th Cir. 1982)(noting administrative res judicata may apply even where claimant did not have hearing, when claimant failed to pursue administrative appeals and no new facts are presented in the subsequent application).  However, res judicata does not apply

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6

applications were denied initially and upon reconsideration.  Tr. 89-91, 92-93.

Plaintiff filed a timely request for a hearing (Tr. 94-95) and appeared with an

attorney at a hearing before an administrative law judge ("ALJ") on September 23,

2010.  Tr. 39-81.

    The ALJ issued her decision on November 15, 2010, finding that Plaintiff

was not disabled under the Act.  Tr. 17-26.  On March 5, 2012, the Appeals

Council denied Plaintiff's request for review (Tr. 1-7), making the ALJ's decision

---

when an ALJ later considers "on the merits" whether the claimant was disabled

during an already-adjudicated period.  *Lester v. Chater*, 81 F.3d 821, 827 n.3 (9th

Cir. 1995).  With this in mind the ALJ expressly disavows any intention to reopen

consideration of Plaintiff's first application, stating that "[d]iscussion of evidence

prior to June 2007 is for background purposes only and does not imply reopening

of the prior claim."  Tr. 17; *see Browning v. Barnhart*, 61 Fed. App'x 503, 504 (9th

Cir. 2003)(distinguishing cases where adjudicator did not disclaim intention to

reopen an earlier application); *Oberg v. Astrue*, 472 Fed. App'x 488, 489 (9th Cir.

2012)("ALJ made it clear that he was not reopening the prior decision").

[3] The Court notes that the ALJ's decision issued on November 15, 2010 does not

reflect an amended onset date of October 8, 2008, as orally requested by Plaintiff's

attorney at the hearing.  Tr. 46.  Plaintiff does not mention the onset date or raise it

as an issue in his briefing.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 7

1  the Commissioner's final decision that is subject to judicial review.  42 U.S.C. §§

2  405(g), 1383(c)(3);  20 C.F.R. §§ 416.1481, 422.210.

3                                      ISSUES

4          Plaintiff, Wesley S. Strait, seeks judicial review of the Commissioner's final

5  decision denying his Title II disability insurance benefits.  Plaintiff has raised two

6  issues for review: (1) whether the ALJ properly considered and/or rejected the

7  opinions of treating and examining sources (ECF No. 21 at 12); and (2) whether

8  the ALJ properly considered and/or rejected Plaintiff's testimony regarding his

9  limitations from his impairments (ECF No. 21 at 16).  The Commissioner contends

10  the final decision in this matter should be affirmed because it is supported by

11  substantial evidence and contains no harmful legal error.  ECF No. 25 at 19.

12                                    DISCUSSION

13  **A. Physician Opinions**

14          A treating physician's opinions are entitled to substantial weight in social

15  security proceedings.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

16  (9th Cir. 2009).  If a treating or examining physician's opinion is uncontradicted,

17  an ALJ may reject it only by offering "clear and convincing reasons that are

18  supported by substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th

19  Cir. 2005).  "However, the ALJ need not accept the opinion of any physician,

20  including a treating physician, if that opinion is brief, conclusory and inadequately

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 8

supported by clinical findings." *Bray*, 554 F.3d at 1228 (quotation and citation

omitted). "If a treating or examining doctor's opinion is contradicted by another

doctor's opinion, an ALJ may only reject it by providing specific and legitimate

reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d

at 1216 (*citing Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995)).

### 1. Joyce Everhart, PhD, Jerry Gardner, PhD, Jeffrey Hedge, DO

As an initial matter, Plaintiff generally argues that he was more limited from

a psychological standpoint than what was determined by the ALJ. ECF No. 21 at

12. In apparent support for this argument, Plaintiff cites to evaluations by Joyce

Everhart, PhD, Jerry Gardner, PhD, Jeffrey Hedge, DO. ECF No. 21 at 12-13.

However, Plaintiff does not assert any errors as to the ALJ's consideration of their

respective diagnoses of Plaintiff. The Court declines to further address this issue

which was not argued with specificity. *See Carmickle v. Comm'r, Soc. Sec.*

*Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

### 2. Dennis Pollack, PhD

Plaintiff contends the ALJ did not properly consider nor reject the opinions

of examining physician Dr. Pollack regarding his mental health. ECF No. 21 at

13-15. On September 17, 2010, Dr. Pollack completed a psychological evaluation

of Plaintiff. Dr. Pollack reviewed Plaintiff's medical records; interviewed him;

administered personality, intelligence, neuropsychological, and malingering

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 9

1    testing; and completed a Mental Medical Source Statement regarding his mental

2    limitations.   Tr. 1848-1858.  Plaintiff was diagnosed with somatization disorder;

3    attention deficit/hyperactivity disorder; depressive disorder, NOS; and personality

4    disorder, NOS.  Tr. 1854.  Dr. Pollack opined that Plaintiff would have moderate

5    limitations with regard to his ability to accept instructions and respond

6    appropriately to criticism from supervisors; marked limitations with regard to his

7    ability to perform activities within a schedule, maintain regular attendance, and be

8    punctual with customary tolerances; and marked limitations with regard to his

9    ability to complete a normal work day and work week without interruptions from

10    psychologically based symptoms and perform at a consistent pace without an

11    unreasonable number and length of rest periods.  Tr. 1856.

12        The ALJ gave significant weight to Dr. Pollack's conclusion that Plaintiff

13    "had no limitation or only mild limitation in most aspects of understanding and

14    memory, concentration and persistence, social interaction and adaptation." Tr.

15    1855-57.  However, she gave less weight to Dr. Pollack's opinion that that Plaintiff

16    had marked limitations in his ability to complete a normal workday and maintain

17    regular attendance.  Tr. 1856.  The ALJ found these conclusions were inconsistent

18    with Dr. Pollack's own findings, the overall medical record, and claimant's daily

19    activities.  In contrast, the ALJ gave significant weight to the medical opinions of

20    state agency consultants Dr. Cynthia Collingwood (Tr. 1320-1333) and Dr. Patricia

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 10

Kraft (Tr. 1342), who opined that the claimant's mental impairments were non-severe.  Tr. 25.  Plaintiff contends that the reasons provided by the ALJ for rejecting the opinion of Dr. Pollack were not supported by substantial evidence. Having reviewed Dr. Pollack's report in its entirety, the Court concludes that Plaintiff's arguments are unavailing.

Here, Dr. Pollack's opinion as examining physician was contradicted by the stage agency consultants' opinions.  Thus, the Court must determine whether the ALJ properly rejected Dr. Pollack's opinion as an examining physician by providing specific and legitimate reasons that are supported by substantial evidence in the record.  *See Bayliss*, 427 F.3d at 1216.  Plaintiff contends that the ALJ's finding that Dr. Pollack's opinion was not consistent with his own findings or the overall medical record is a "boilerplate statement" that does not achieve the level of specificity required to reject Dr. Pollack's opinion.  ECF No. 21 at 15. However, an ALJ may discredit physician's opinions that "are conclusory, brief, and unsupported by the record as a whole … or by objective medical findings." *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

First, the ALJ specifically found that Dr. Pollack's opinion was "entirely inconsistent" with his own findings "that show little to no problem with concentration, persistence, or pace."  Tr. 25.  Far from a "boilerplate" statement, the ALJ identified specific portions of Dr. Pollack's findings on the Mental

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

1    Medical Source Statement that found no limitation or mild limitation in the

2    categories of concentration, persistence or pace; and found them inconsistent with

3    his finding of moderate and marked limitations in the ability to complete a normal

4    workday and maintain regular attendance.  Tr. 25.  Moreover, Dr. Pollack's

5    narrative report indicated that Plaintiff was "neatly groomed," "cooperative," and

6    "organized in his presentation of self." Tr. 1848.  His answers were "extremely

7    detailed" and "[h]is thinking was logical and progressive.  *Id*.  Plaintiff's

8    intelligence scores were in the average to high average range.  Tr. 1852.  His

9    neuropsychological testing was mostly in the normal range, with one test

10   indicating that he had an impulsive style and indicated a difficulty with vigilance.

11   Tr. 1853.  Personality test scores did indicate that Plaintiff may struggle with

12   "inability to concentrate" and "forgetfulness."  Tr. 1852.   None of these objective

13   medical findings support Dr. Pollack's determination that Plaintiff would suffer

14   "marked limitations" in his ability to maintain attendance, perform activities in a

15   schedule, or complete a normal workday without interruption.  As these findings of

16   marked and moderate limitations were unsupported and contradicted by other

17   findings in Dr. Pollack's own report, the ALJ properly found they were entitled to

18   little weight. *See Batson*, 359 F.3d at 1195.

19        Notably, Dr. Pollack offered no explanation of how his objective medical

20   conclusions translated to the marked mental limitations indicated on Mental

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 12

Medical Source Statement.  These findings appear on a standardized check-the-box

form and are not referenced elsewhere in Dr. Pollack's report.  Tr. 1855-58.

Despite being asked to do so, Dr. Pollack did not explain these limitations in

narrative form.  Tr. 1857.  Accordingly, these findings are entitled to little weight.

*See Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012) (explaining that the

Ninth Circuit has consistently permitted ALJs to "reject check-off reports that do

not contain any explanation of the bases of the [physician's] conclusions")

(quotation, citation and modifications omitted).

Second, the ALJ properly found that Dr. Pollack's opinion was inconsistent

with the overall medical record.  Tr. 23-25.  An examination in May of 2007 by

Joyce Everhart, PhD indicated normal attention, concentration, and intellectual

ability.  Tr. 742.  Testing showed no difficulty in executive functioning and only a

mild degree of depression.  *Id*.  Subsequent progress notes show that medication

effectively treated his mental symptoms and mental status evaluations were largely

normal.  Tr.  23-24, 910, 1043, 1059, 1095, 1283, 1665, 1761.  "Impairments that

can be controlled effectively with medication are not disabling for the purpose of

determining eligibility for SSI benefits."  *Warre v. Comm'r of Soc. Sec. Admin.*,

439 F.3d 1001, 1006 (9th Cir. 2006).

Third, the ALJ observed that Plaintiff's daily activities were inconsistent

with Dr. Pollack's opinion.  Tr. 24-25.  However, Plaintiff fails to assert any errors

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 13

1    as to whether the ALJ's consideration of daily activities was a specific and

2    legitimate reason for rejecting Dr. Pollack's opinion.  Thus, the Court declines to

3    further address this issue which was not argued with specificity in Plaintiff's

4    briefing.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2

5    (9th Cir. 2008).  For all of the reasons detailed above, the Court finds the ALJ

6    offered specific and legitimate reasons, supported by substantial evidence, for

7    rejecting Dr. Pollack's opinion as an examining physician.

8    **B. Adverse Credibility Findings**

9    In social security proceedings, a claimant must prove the existence of

10   physical or mental impairment with "medical evidence consisting of signs,

11   symptoms, and laboratory findings."  20 C.F.R. § 404.1508.  A claimant's

12   statements about his or her symptoms alone will not suffice.  20 C.F.R. §§

13   404.1508; 404.1527.  Once an impairment has been proven to exist, the claimant

14   need not offer further medical evidence to substantiate the alleged severity of his or

15   her symptoms.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc).

16   As long as the impairment "could reasonably be expected to produce [the]

17   symptoms," 20 C.F.R. § 404.1529(b), the claimant may offer a subjective

18   evaluation as to the severity of the impairment.  *Id.*  This rule recognizes that the

19   severity of a claimant's symptoms "cannot be objectively verified or measured."

20   *Id.* at 347 (quotation and citation omitted).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 14

In the event that an ALJ finds the claimant's subjective assessment unreliable, however, "the ALJ must make a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).  In making such a determination, the ALJ may consider, *inter alia*: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Id.*  The ALJ may also consider a claimant's "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  If there is no evidence of malingering, the ALJ's reasons for discrediting the claimant's testimony must be "specific, clear and convincing." *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quotation and citation omitted).  The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

As identified by the ALJ in her decision, Plaintiff testified that he had pain in his left knee and had to use a cane to walk.  Tr. 68.  He had pain in his lower

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

back, neck, and left shoulder.  Tr. 56, 60-61.  He had 10% range of motion in his

left shoulder, had trouble lifting that arm above his head, and that arm was weak

and went to sleep at night.  Tr. 60-61.  He testified that he could sit about 15-20

minutes at a time and stand about 15-20 minutes at a time, changing positions

frequently.  Tr. 58, 67.  He could walk about two blocks.  Tr. 68.  Plaintiff argues

that the ALJ did not state specifically why Plaintiff's testimony concerning the

severity of his physical limitations including his limited ability to sit, walk, lift, and

use his non-dominant left arm, was not credible and what facts in the record led to

that conclusion.  ECF No. 26 at 2.  The Court disagrees.

Contrary to Plaintiff's assertions, the ALJ provided specific, clear and

convincing reasons for discrediting his testimony.  First, the ALJ found that

objective medical findings "reflect far less than disabling limitations."   Prior to the

worsening of Plaintiff's knee problem in late 2009, the record showed little

evidence of disabling function.  *See* Tr. 23, 1060, 1075-79, 1216, 1272.  The ALJ

acknowledged that Plaintiff underwent multiple knee surgeries from December

2009 through June of 2010, and was largely confined to a wheelchair for several

months during this time.  Tr. 23.  However, the ALJ found no evidence in the

record that the Plaintiff had a disabling limitation that lasted for more than 12

months.  *Id*.  Further, "[a]s indicated by the voluminous treatment record from the

VA and other sources, the [Plaintiff] has access to a wide range of medical and

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 16

mental health resources.  Interestingly, however, the treatment record largely ends in June 2010.  It contains no surgery report regarding the most recent knee procedure nor any other objective evidence regarding the current status of the left knee."  *Id*.  As to Plaintiff's shoulder and back pain, the ALJ recognized that imaging studies showed abnormalities in the spine and degenerative changes in the left shoulder, but clinical examinations "showed minimal functional restrictions" and "were generally unremarkable."  *Id*.; see also Tr. 746, 1090, 1218-22, 1230, 1474, 1480, 1661-62.   It is proper for the ALJ to consider a lack of medical evidence in a credibility analysis.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)("lack of medical evidence" can be "a factor" in discrediting testimony, but "cannot form the sole basis").

Second, the ALJ found "serious credibility concerns" due to inconsistent statements by Plaintiff and evidence of symptom exaggeration.  Tr. 24; *see Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001)(inconsistent statements and "tendency to exaggerate" are specific and convincing reasons to discredit credibility).  Most glaringly, the record shows that Plaintiff had a black belt karate test on June 27, 2009, and engaged in heavy martial arts up to six nights a week through June 2009.  Tr. 1216, 1226, 1241.  When confronted with this evidence at the hearing, Plaintiff testified that he told people at the nursing home that he used to do karate.  Tr. 71-73.  However, the ALJ found that this explanation was

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17

"unlikely" because the claimant made these statements to providers in April of

2009, well before he entered the nursing home.  Tr. 24.  Medical records from

April 2010 indicated that Plaintiff and his family enjoyed doing martial arts

together 3 to 4 times per week. Tr. 1761.   Additionally, the ALJ noted an incident

in December 2009, when Plaintiff received narcotic pain medication for neck and

shoulder pain after a car accident.  Tr. 24.  He assured the doctor he had someone

to drive him home, and was later observed walking to the parking lot, getting in his

car, and driving himself home.  Tr. 1347.  Similarly, during Plaintiff's nursing

home stay in 2010, he requested an assistant to push him in his wheelchair due to

left shoulder pain, but was later observed pushing himself through the facility and

into the parking lot without any appearance of shoulder pain.  Tr. 1676.

Dr. Pollack noted that Plaintiff reported inconsistent income amounts, and

test results indicated he could be exaggerating his symptoms.  Tr. 1854.  Plaintiff

told Dr. Pollack in September 2010 that he had just recently closed down a

business he owned and operated, which contradicts Plaintiff's testimony that he

last worked in October 2008.  Tr. 45, 1849.  Dr. Pollack also remarked that a

review of Plaintiff's medical records indicated that "physicians do not always

support his complaints to the extent that he reports them."  *Id.*

Third, the ALJ found evidence that Plaintiff may have stopped working for

reasons unrelated to his disability.  Tr. 24.  In September 2008, Plaintiff told

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 18

medical providers that he may get fired because his employer "changed the rules on [him]" multiple times.  Tr. 1063.  The ALJ may reasonably draw an adverse inference from evidence that Plaintiff stopped working for reasons other than his allegedly disabling medical condition.  *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001)(finding claimant not credible in part because he was laid off, not because he was injured).

Finally, the ALJ found that Plaintiff's reported daily activities were consistent with the RFC finding.  Tr. 24.  Defendants argue this evidence was properly offered to discredit Plaintiff's testimony.  However, the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities … does not in any way detract from her credibility as to her overall disability."  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007)(*quoting Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)).  Moreover, "the two grounds for using daily activities to form the basis of the adverse credibility determination" are whether they contradict claimant's other testimony and (2) whether or not the daily activities "meet the threshold for transferable work skills."  *Id*.  Here, the ALJ did not explain how Plaintiff's daily activities contradicted any specific testimony, nor did she make any specific finding that Plaintiff's daily activities were transferable to the work setting.  Thus, it would be legal error for the ALJ to base her adverse credibility findings on Plaintiff's reported daily activities.  However, it is unclear

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19

to the Court whether this determination by the ALJ was advanced as a "reason" for discrediting Plaintiff's statements.[4]  And even assuming *arguendo*, that the ALJ did offer evidence of daily activities for this purpose, the error was harmless in light of the substantial evidence given by the ALJ, discussed in detail above, to support her adverse credibility finding.  *See Molina*, 674 F.3d at 1115 (an error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination.").  Furthermore, Plaintiff fails to argue that the ALJ's consideration of daily activities to support the adverse credibility finding was a legal error.  *See Shinseki*, 556 U.S. at 409-10 (party appealing the agency's decision generally bears the burden of establishing that it was harmed).

Having thoroughly reviewed the record, the Court finds that the ALJ supported her adverse credibility findings with specific, clear and convincing findings which are supported by substantial evidence; and supported her rejection of Dr. Pollack's opinion with specific and legitimate reasons that were supported by substantial evidence.  Accordingly, the Court grants summary judgment in Defendant's favor.

///

///

[4] Claimant's daily activities were also referenced in the ALJ's findings regarding the physician opinion evidence.  Tr. 25.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 20, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 24, is

    **GRANTED**.

3. The hearing set for May 5, 2014 is **VACATED**.

The District Court Executive is hereby directed to file this Order, enter

Judgment for Defendant, provide copies to counsel, and **CLOSE** this file.

**DATED** April 18, 2013.



THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 21